UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CVR PINEWOOD VINTAGE VINES, LLC,

                Plaintiff,

      v.

EVANSTON INSURANCE COMPANY,

                Defendant.

No. 23-CV-2895 (RA)

<u>OPINION & ORDER</u>

---

RONNIE ABRAMS, United States District Judge:

    In 2022, Plaintiff CVR Pinewood Vintage Vines, LLC ("CVR") commenced this insurance action against Evanston Insurance Company ("Evanston"), to collect a judgment that it previously obtained against Sprucewood Construction Inc. ("Sprucewood"), a subcontractor insured by Evanston. Evanston filed a counterclaim, seeking a declaration that no coverage is available for the judgment.

    Before the Court are the parties' cross-motions for summary judgment. Evanston principally argues that CVR cannot enforce the judgment against it, because Evanston properly disclaimed coverage. CVR disagrees, insisting that Evanston is precluded from disclaiming coverage because its disclaimers were untimely and defective as a matter of law. For the reasons that follow, CVR's motion for summary judgment is denied, and Evanston's motion is granted.

## BACKGROUND

    The following facts are undisputed unless otherwise noted.

## I.    Procedural Background

### A.  The Underlying Action

On February 12, 2015, Luis Pizarro was injured when he fell while performing construction work in the course of his employment for PT Sheathing Inc. d/b/a Protec Sheathing. Dkt. No. 31 ("Def.'s 56.1") ¶¶ 5–7. CVR, which owns the property on which Pizarro was injured, had retained Pinewood Development Corp. ("PDC") as general contractor to oversee the construction project taking place there. *Id.* ¶¶ 1–2. PDC then hired Sprucewood—insured by Evanston—as a subcontractor. *Id.* ¶ 3, 18. Sprucewood, in turn, hired Protec Sheathing, Pizarro's employer, to perform the construction work. *Id.* ¶¶ 5–6.

At some point before Pizarro's injury, CVR; its general contractor, PDC; and PDC's subcontractor Sprucewood entered into a contract. In relevant part, this contract required Sprucewood to indemnify CVR under certain circumstances and to maintain insurance coverage that named CVR as an additional insured. Dkt. No. 33 Ex. 24 ("Pl.'s 56.1") ¶ 16.

In April 2015, after his injury, Pizarro filed an action in New York State Supreme Court against CVR and other defendants, alleging that they were negligent and had committed violations of New York State laws (the "Underlying Action"). Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶¶ 5–7; *see Luis Pizarro v. CVR Pinewood Vintage Vines LLC, CVR First LLC, S & H Equities (NY), Inc., and "XYZ" Corp.*, Index No. 602411/2015 (N.Y. Sup. Ct.). Approximately one year later, in March 2016, Pizarro amended his complaint to add claims against Sprucewood. Def.'s 56.1 ¶ 13; Pl.'s 56.1 ¶ 10. Sprucewood never answered or responded to the complaint in the Underlying Action. Def.'s 56.1 ¶ 14. Accordingly, a default judgment was issued against it. *Id.* ¶ 15; Pl.'s 56.1 ¶ 12. Then, in July 2018, the court in the Underlying Action granted Pizarro summary judgment on

certain state law claims against CVR. Pl.'s 56.1 ¶ 13. CVR later settled with Pizarro for $2,000,000 plus statutory interest. Def.'s 56.1 ¶ 16; Pl.'s 56.1 ¶ 14.

### B. The Third-Party Action and Judgment

As the Underlying Action was ongoing, in February 2016, CVR filed a lawsuit against Sprucewood (the "Third-Party Action"). CVR asserted that Sprucewood was liable because it had contractually agreed to indemnify and hold CVR harmless and to maintain insurance on CVR's behalf, but had not done so. Def.'s 56.1 ¶¶ 10–12. CVR brought four claims: for contribution, breach of contract, common law indemnification, and contractual indemnification. Pl.'s 56.1 ¶ 9.

Unlike in the Underlying Action, Sprucewood appeared and defended itself. *Id.* ¶ 11. Judgment was nonetheless entered against Sprucewood and in favor of CVR on November 16, 2021, in the amount of $2,000,400 (the "Judgment"). *Id.* ¶ 15; Def.'s 56.1 ¶ 17.

### C. The Instant Action

CVR then sought to obtain the Judgment from Sprucewood's insurer, Evanston. In November 2022, CVR filed an action to obtain the Judgment from Evanston in New York State court.[1] *See* Dkt. No. 1 (Notice of Removal) ¶ 1; Def.'s 56.1 ¶ 42; Pl.'s 56.1 ¶ 1. Evanston removed the action to this Court in April 2023, Dkt. No. 1 (Notice of Removal) ¶ 1, and filed a counterclaim against CVR, Def.'s 56.1 ¶ 44; Dkt. No. 15 (Answer & Counterclaim); Pl.'s 56.1 ¶ 3. The parties subsequently filed cross-motions for summary judgment on their respective claims. Oral argument was held on September 11, 2025.

---

[1] CVR initially brought this action against Essex Insurance Company, which merged into Evanston on June 30, 2016. Because Evanston is the successor of the policies relevant to this case, the parties and this opinion treat the two as the same. *See* Pl.'s 56.1 ¶ 1 n.1; Dkt. No. 14 (Stipulation & Order).

## II.    Disclaimer Letters

At the heart of this action are a series of four disclaimer letters that Evanston issued to Sprucewood in 2015 and 2016.[2] Evanston claims that, through these letters, it properly disclaimed coverage for both the injury to Pizarro and the Third-Party Action. CVR responds that the letters did not adequately explain the basis for disclaiming coverage and were untimely as a matter of law, thereby precluding Evanston from disclaiming coverage for the Third-Party Action.

Evanston was first notified of Pizarro's injury on March 13, 2015, when an insurance broker for PDC sent Evanston notice of Pizarro's accident by email. Def.'s 56.1 ¶ 30. The broker therein demanded defense and indemnification for the accident on behalf of PDC—but not CVR. Pl.'s 56.1 ¶¶ 26–27. A few days later, on March 17, 2015, Sprucewood also notified Evanston that it had received a letter from PDC's general liability carrier demanding that Sprucewood defend and indemnify PDC in connection with Pizarro's accident. Def.'s 56.1 ¶ 31; Pl.'s 56.1 ¶ 28.

Then, in April 2015, Evanston issued two letters that purported to disclaim coverage for Pizarro's injury. Evanston issued its first disclaimer to Sprucewood on April 13, 2015, about one month after being notified of the accident. Def.'s 56.1 ¶ 32; Pl.'s 56.1 ¶ 30; *see* Dkt. No. 33 Ex. Q (Apr. 13, 2015 Letter).[3] This letter disclaimed coverage on the basis of three contractual provisions, discussed in more detail below. Def.'s 56.1 ¶¶ 33–35. Evanston's letter noted that no suit had yet been filed and requested that it be provided notice if this occurred. Def.'s 56.1 ¶ 36. No notice of the Underlying Action was ever provided to Evanston. On April 28, 2015, Evanston issued a second disclaimer letter. This letter corrected Pizarro's name and address, but otherwise disclaimed liability on the same basis as the prior letter. Def.'s 56.1 ¶ 37; Pl.'s 56.1 ¶ 30; *see* Dkt.

---

[2] Disclaimer letters were also sent to other parties not material to the instant motion.
[3] Two paragraphs in Plaintiff's 56.1 Statement are labeled as paragraph 30. The citation herein refers the first paragraph 30.

No. 33 Ex. R (Apr. 28, 2015 Letter). Although Evanston copied a number of parties on both April letters, including PDC and Pizarro, it did not copy CVR. Pl.'s 56.1 ¶¶ 30–31.

Evanston received notice of the Third-Party Action on May 10, 2016. After CVR filed that lawsuit, Sprucewood sent a letter to Evanston demanding defense and indemnification for the Third-Party Action. Pl.'s 56.1 ¶ 36. Evanston received the letter on May 12, 2016, although it asserts that the claim handler did not receive it until some time in August 2016. Def.'s 56.1 ¶ 39; Pl.'s 56.1 ¶ 37.

On November 8, 2016, Evanston issued a letter to Sprucewood disclaiming coverage for the Third-Party Action pursuant to the same three contractual provisions it previously cited. Def.'s 56.1 ¶ 40; Pl.'s 56.1 ¶ 37. For the first time, Evanston copied CVR and its counsel. Def.'s 56.1 ¶ 40. In the letter, Evanston asserted that the Third-Party Action "relates back to" the Underlying Action and that coverage was therefore disclaimed on the same bases provided in its April 2015 disclaimers. Def.'s 56.1 ¶ 40; Dkt. No. 29 Ex. F (Nov. 8, 2016 Letter) at 2.

On November 18, 2016, Evanston issued yet another letter. In this letter, it disclaimed coverage for the Third-Party Action under additional policy provisions, detailed below, and explicitly stated that there would be "no coverage for [CVR] Pinewood." Def.'s 56.1 ¶ 41; Pl.'s 56.1 ¶ 38; Dkt. No. 33 Ex. V (Nov. 18, 2016 Letter) at 2. Evanston sent copies of this fourth letter to CVR and its counsel. Def.'s 56.1 ¶ 41.

### III.    The Commercial General Liability Policy

Prior to Pizarro's accident, Evanston issued Sprucewood two liability policies relevant to this action. The first, and most critical, is the Commercial General Liability Policy, No. 3DX0044 (the "CGL Policy"). *See* Def.'s 56.1 ¶ 18; Pl.'s 56.1 ¶ 19; Dkt. No. 29 Ex. H (CGL Policy). Pursuant to the CGL Policy, Evanston agreed to "pay those sums that the insured becomes legally obligated

5

to pay as damages because of 'bodily injury' or 'property damage' to which th[e] insurance applies." Def.'s 56.1 ¶ 20. Evanston retained the "right and duty to defend the insured against any 'suit' seeking those damages," and maintained that "[n]o other obligation or liability to pay sums or perform acts or services [would be] covered unless explicitly provided for" under certain other provisions of the contract. *Id.*

The parties raise arguments as to the adequacy of Evanston's citation of three exclusions and endorsements contained in the CGL Policy. These are (1) the Contractual Liability Limitation Endorsement; (2) the Exclusion – Employer's Liability and Bodily Injury to Contractors or Subcontractors Endorsement (the "Bodily Injury Endorsement"); and (3) the Blanket Additional Insured Endorsement. As the Court will return to, CVR insists that Evanston should have cited the Contractual Liability Exclusion instead of or in addition to the Contractual Liability Limitation Endorsement.[4] *See* Dkt. No. 33 ("Pl.'s SJ Mot.") at 8–9; Def.'s 56.1 ¶¶ 20, 22–24; Pl.'s 56.1 ¶ 24.

In addition to the CGL Policy, Evanston issued Sprucewood the Excess Liability Policy, No. XONJ569314 (the "Excess Policy"). Def.'s 56.1 ¶ 25. The terms of the Excess Policy are not at issue in this action.

## LEGAL STANDARD

The Court will grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses*

---

[4] The disclaimers also omitted a portion of the Bodily Injury Endorsement—language CVR insists was necessary to disclaim pursuant to that policy provision. *See* Pl.'s SJ Mot. 8–9.

*Point*, 589 F.3d 46, 49 (2d Cir. 2009).[5] In considering whether a genuine dispute of material fact exists, the Court views the facts "in the light most favorable to plaintiff's case." *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). Where there is more than one motion for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

### DISCUSSION

Each party's principal arguments in support of and in opposition to summary judgment are the same. CVR argues it is entitled to both summary judgment and dismissal of Evanston's counterclaim because Evanston's disclaimer letters were untimely and defective, precluding Evanston from disclaiming coverage. Evanston, meanwhile, maintains that CVR cannot enforce the Judgment against it because CVR's rights turn on and can be no greater than Sprucewood's. Dkt. No. 36 ("Def.'s Opp'n") at 8. Because Evanston has adequately disclaimed coverage to Sprucewood for loss arising from the underlying incident, Evanston says, coverage is also unavailable to CVR. *Id.* at 9. For the reasons that follow, the Court denies CVR's motion for summary judgment, and grants Evanston's.

### I.    CVR's Rights Depend on Sprucewood's

As an initial matter, Evanston argues that CVR's rights depend on, and can be no broader than, Sprucewood's. The Court agrees. As judgment creditor, CVR's rights under the insurance policy depend on Sprucewood's.

---

[5] Unless otherwise indicated, quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

New York Insurance Law ("NYIL") § 3420(a) states in relevant part that a New York "policy or contract insuring against liability for injury to person . . . or against liability for injury to, or destruction of, property shall . . . contain[] in substance the following provision or provisions that are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors":

> (2) A provision that in case judgment against the insured . . . in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may . . . be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

NYIL § 3420(a)(2). "Before the New York legislature enacted the precursors to Section 3420, under the common law an injured party possessed no cause of action against the insurer of the tortfeasor . . . because there was no privity of contract between plaintiff and the insurance carrier." *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 175 (2d Cir. 2010). Section 3420 "remedied th[at] inequity by creating a limited statutory cause of action on behalf of injured parties directly against insurers." *Id.*

Subsection 3420(a)(2) then, on which CVR relies, "allows an injured party with an unsatisfied judgment against an insured party to sue the insurer for satisfaction of the judgment in some circumstances." *Id.* at 174. "Once the statutory prerequisites [of § 3420] are met, the injured party steps into the shoes of the tortfeasor and can assert any right of the tortfeasor-insured against the insurance company." *Lang v. Hanover Ins. Co.*, 820 N.E.2d 855, 858 (N.Y. 2004). Because "the creditor's rights are no greater or less than those of the insured debtor," however, "recovery cannot exceed the policy limits." *Cont'l Ins. Co.*, 603 F.3d at 179. Accordingly, "the relevant inquiry" in an action brought by a judgment creditor "is whether or not the insured could have

8

brought an action against the insurer for indemnification had it paid the initial judgment." *Sales v. U.S. Underwriters Ins. Co.*, No. 93-cv-7580 (CSH), 1995 WL 144783, at *8 (S.D.N.Y. 1995) (emphasis omitted). Put another way, to determine CVR's rights against Evanston, the Court must assess Sprucewood's.

## II.    Timeliness of Disclaimers

CVR argues that Evanston failed to provide timely notices of its disclaimers to both CVR and Sprucewood as required under NYIL § 3420(d)(2). This failure, it says, rendered the notices ineffective and estops Evanston from now disclaiming coverage. Evanston disagrees, arguing first that § 3420(d)(2) applies only to cases involving death and bodily injury, not to claims for contractual indemnification—even when the underlying claim involved death or bodily injury; second, that it timely disclaimed as to Pizarro's injury; and, third, that, as a judgment creditor which did not provide notice of its claims to Evanston, CVR was not entitled to notice of the disclaimers. Def.'s Opp'n 12–13. For the reasons below, the Court finds that Evanston's disclaimers were effective against CVR.

Subsection 3420(d) provides in pertinent part:

(1)(A) This paragraph applies with respect to a liability policy that provides coverage with respect to a claim arising out of the death or bodily injury of any person, where the policy is: (i) subject to section three thousand four hundred twenty-five of this article, other than an excess liability or umbrella policy; or (ii) used to satisfy a financial responsibility requirement imposed by law or regulation. . . .

(2) If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

NYIL § 3420(d).

The purpose of § 3420(d) "is to avoid prejudice to the insured, [and] the injured claimant . . . each of whom could be harmed by delay in learning of the carrier's position." *NGM Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150, 153 (2d Cir. 2010) (per curiam). "If the insurance carrier fails to disclaim coverage in a timely manner, it is precluded from later successfully disclaiming coverage." *Id.*[6]

Similarly, the insured or judgment creditor must provide timely notice under the policy. As a general rule, "the judgment creditor stands in the shoes of the assured, and must abide by his case when suing on the policy." *Rushing v. Com. Cas. Ins. Co.*, 167 N.E. 450, 451 (N.Y. 1929). An insured's failure to give timely notice may, therefore, doom a judgment creditor's claim. *See id.* (reversing and dismissing action brought by judgment creditor without prejudice where insured did not provide the "immediate notice [of accident] called for by the policy" and did not provide "explanation or excuse" for delay). But when an insured's notice is delayed, a judgment creditor's timely notice will suffice and preserve its claim. *Cont'l Ins. Co.*, 603 F.3d at 175–76.

It is undisputed that Sprucewood timely notified Evanston of the underlying accident and the Third-Party Action. Although Evanston maintains that CVR never provided it with any such notice, it does not argue that CVR was required to do so.[7] Rather, Evanston asserts that it had no

---

[6] The New York Court of Appeals has explained that a timely disclaimer is required only where the "denial of liability [is] predicated upon an exclusion set forth in a policy which, without the exclusion, would provide coverage for the liability in question." *NGM Ins. Co.*, 593 F.3d at 153. "[T]he statute does not apply, however, where the policy as written could not have covered the liability in question under any circumstances; that is, notice is not required where there is no coverage by reason of lack of inclusion." *Id.* Neither party argues that there is no coverage under the CGL Policy by reason of lack of inclusion.

[7] Nor could it. Both 3420(a) and (d) state that notice may be provided either by the insured "or" another claimant. *See* NYIL § 3420(a) (requiring that policy contain a "provision that notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the insurer in this state, with particulars sufficient to identify the insured, shall be deemed notice to the insurer"); *id.* § 3420(d)(1)(B) ("Upon an insurer's receipt of a written request by an injured person who has filed a claim or by another claimant . . ."); *see also Johnson v. Atl. Cas. Ins. Co.*, No. 13-cv-1002S (WMS), 2015 WL 5021953, at *5 (W.D.N.Y. August 23, 2015) (explaining that, in the absence of policy language to the contrary, "notice by one insured may be deemed sufficient to notify an insurer of the claims of additional parties which are either united in interest with the insured or where there is no adversity between those parties"); *U.S. Liab. Ins. Co. v. Winchester Fine Arts Servs., Inc.*, 337 F. Supp. 2d

obligation to issue timely disclaimer letters to CVR because it did not know CVR to be a claimant. Having set aside any question of whether CVR's failure to provide notice was fatal to its claim, the Court turns to the parties' dispute as to whether Evanston's April and November disclaimers were timely as a matter of law.

### A. April 2015 Letters

CVR contends that Evanston's April 2015 letters—which disclaimed coverage and contractual indemnity to PDC based on Pizarro's injury—were never sent to CVR and are therefore ineffective against it. Pl.'s SJ Mot. 5.[8] Evanston does not dispute that it never sent the April 2015 disclaimer letters to CVR, but maintains that—because CVR did not provide it notice of the accident or its identity as a claimant—it had no duty to provide CVR with a disclaimer of liability as to the underlying accident. The Court agrees.

"In order for an insurer to effectively disclaim liability, N.Y. Ins. Law § 3420(d) requires the insurer to give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." *U.S. Underwriters Ins. Co. v. Held Bros.*, No. 97 Civ. 5407 (HB), 1998 WL 355425, at *2 (S.D.N.Y. June 30, 1998). "New York insurance law does not," however, "require an insurer to notify an injured party when that injured party has not independently provided notice of an occurrence to the insurer, whatever the ultimate reason for the denial of coverage." *Christopher v. Glob. Aerospace*, No. 21-cv-4453 (DG) (RER), 2022 WL 17775498, at *7 (E.D.N.Y. August 5, 2022); *see also* Order Adopting Report and Recommendation, *Christopher*, No. 21-cv-4453 (DG) (RER)

---

435, 448 (S.D.N.Y. 2004) ("Once an insurer has received notice from the insured, whatever notice requirements may be applicable are *prima facie* satisfied . . . . Thus, the ability of an injured party to provide notice to the insurer in lieu of the insured under § 3420(a)(3) is moot once notice has been accomplished by the insured."). Sprucewood's timely notifications to Evanston were therefore sufficient to preserve CVR's claim as judgment creditor.

[8] CVR does not argue that the April 2015 notices were untimely as to Sprucewood, PDC, or Pizarro.

(E.D.N.Y. Sept. 29, 2022), Dkt. No. 25. Nor does "an insurer's failure to copy an injured party on disclaimer correspondence with an insured . . . render a subsequent disclaimer addressed to the injured party late as a matter of law." *Id.* The Second Circuit "has held that an insurer's obligation to disclaim as to an injured party arises when the injured party provides notice of the occurrence to the insurer." *Travelers Indem. Co. of Am. v. Estate of Zeygermakher ex rel. Sidon*, 427 Fed. App'x 30, 32 (2d Cir. 2011) (summary order) (concluding that insurer's timely notice to insured was not "undone by [insurer's] failure to copy" judgment creditor on the disclaimer letter, because creditor had "never provided [insurer] with notice of the incident"). Where an injured party does not provide notice to the insurer, therefore, the insurer is not "obligated to send a separate notice of disclaimer to [the injured party]," nor should it be estopped from disclaiming coverage on this basis. *Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 217 (2d Cir. 2004).

It is undisputed that CVR did not provide Evanston with notice of the underlying accident. In light of this, and in the absence of evidence that Evanston was aware of CVR's status as a claimant, Evanston's failure to copy CVR on the April 2015 letters disclaiming coverage for the underlying accident did not render them untimely as a matter of law.

### B.  November 2016 Letters

CVR next asserts that Evanston's November 2016 disclaimer letters were untimely under NYIL § 3420(d)(2), because six months passed between when it was notified of the Third-Party Action in May 2016 and when it sent disclaimer letters in November 2016. Pl.'s SJ Mot. 6. Evanston contends that this argument is moot because NYIL § 3420(d)(2) does not apply to indemnification actions. Although this presents a close question, the Court again agrees with Evanston.

### 1.  Whether CVR May Raise Untimeliness Argument

As an initial matter, Evanston asserts that CVR cannot argue that the disclaimers were issued to it in an untimely manner, because CVR did not provide Evanston with notice. Def.'s Opp'n 15. For the reasons given above, this is true insofar as it applies to CVR. As judgment creditor, however, CVR steps into the shoes of Sprucewood and "can assert any right" against Evanston that Sprucewood may, including one for untimeliness. *See Lang*, 820 N.E.2d at 858 ("Once the statutory prerequisites [of § 3420] are met, the injured party steps into the shoes of the tortfeasor and can assert any right of the tortfeasor-insured against the insurance company."). Accordingly, because Sprucewood may argue that Evanston was estopped from disclaiming on the basis of untimeliness, so too may CVR.

### 2.  Whether NYIL § 3420(d)(2) Applies to the Third-Party Action

Evanston next argues that § 3420(d)(2) is limited to actions arising from death and bodily injury, and does not extend to the kind of claims brought in the Third-Party Action. Def.'s Opp'n 14. The Court agrees.

Subsection 3420(d) "applies . . . to a liability policy that provides coverage with respect to a claim arising out of the death or bodily injury of any person." NYIL § 3420(d). Subsection (2) further provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

*Id.* § 3420(d)(2).

The Court of Appeals has yet to address whether § 3420(d)(2) applies in the precise circumstances presented by the case at bar, where a party seeks to recover a judgment issued in a contribution, common law indemnification, and contractual indemnification action arising from an underlying personal injury action.[9] "Where state law is unsettled," federal courts are "obligated to carefully predict how the state's highest court would resolve the uncertainty or ambiguity." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020). To do so, federal courts should "carefully review available resources," such as "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, federal cases which construe the state statute, scholarly works and any other reliable data." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). But where the statute's text is "unambiguous," the court "need not look further." *See Jones v. Bill*, 890 N.E.2d 884, 886 (N.Y. 2008); *see also Zivkovic v. Laura Christy, LLC*, No. 17-cv-553, 2022 WL 1697991, at *2 (S.D.N.Y. May 26, 2022) ("The New York Court of Appeals has held repeatedly that where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning."). Such is the case in this action.

"By its plain terms, section 3420(d)(2) applies only in a particular context: insurance cases involving death and bodily injury claims arising out of a New York accident and brought under a New York liability policy." *KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc.*, 15 N.E.3d 1194, 1198 (N.Y. 2014). "Where . . . the underlying claim does not arise out of an accident involving bodily injury or death, the notice of disclaimer provisions set forth in Insurance Law § 3420(d) are inapplicable." *Id.* (concluding that "environmental contamination claims . . . [did] not fall within the scope of Insurance Law 3420(d)(2)"); *see also Vecchiarelli v. Cont'l Ins. Co.*, 716

---

[9] Although CVR also brought a breach of contract claim, it no longer seeks to recover judgment on that claim. Dkt. No. 40 (Pl.'s Response to Def.'s 56.1) ¶ 12.

N.Y.S.2d 524, 525–26 (N.Y. App. Div. 2000) (denying application of 3420(d)(2) in breach of contract case arising from fire damage to plaintiff's residence).

It is without dispute that § 3420(d)(2) applies to the denial of coverage for Pizarro's accident. In that circumstance, Evanston "disclaim[ed] liability [and] den[ied] coverage" "under a liability policy issued or delivered in this state" "for . . . bodily injury arising out of a[n] . . . accident." NYIL § 3420(d)(2). By the plain terms of the statute, however, § 3420(d)(2) does not apply to the Third-Party Action. In that action, Evanston did not "deny coverage" for "bodily injury"—but rather for contribution, breach of contract, common law indemnification, and contractual indemnification claims. *Id.* Section (d)(2) does not apply in such circumstances.

The Court of Appeals' decision in *Preserver Ins. Co. v. Ryba* is instructive on this point. 893 N.E.2d 97 (N.Y. 2008). In *Preserver*, construction worker Arthur Ryba was injured when he fell while working on a property owned by general contractor Joaquim Almeida. *Id.* at 98. Ryba commenced suit against Almeida for causes of action arising from his injury. *Id.* Almeida in turn brought a Third-Party Action against Ryba's employer East Coast Stucco—whom Preserver Insurance Company insured—for common-law indemnification/contribution, contractual indemnification, and breach of contract for failure to procure the liability insurance as agreed. *Id.* Preserver commenced an action in New York Supreme Court, seeking a declaration that it had no duty to defend or indemnify the company against Almeida's claims for contractual indemnification, breach of contract, and common-law indemnification. *Id.* Almeida's homeowners' insurer cross-moved for summary judgment, asserting that Preserver Insurance was time-barred from disclaiming coverage under § 3420(d). *Id.* at 98–99.

The Court concluded, in relevant part, that § 3420(d) would not have estopped Preserver from denying coverage for the breach of contract claim because that provision applied only to

"denials of coverage for death or bodily injury." *Id.* at 101.[10] In short, the Court of Appeals found that breach of contract claims do not fall within the scope of the statute, even when they arise out of an accident resulting in bodily injury.

In urging that *Preserver* supports its position that § 3420(d)(2) applies here, CVR relies on the fact that the "Court of Appeals could have made . . . a pronouncement" that § 3420(d)(2) does not apply to indemnification actions "in a case involving both contractual indemnification and breach of contract claims, but chose to limit its ruling to the latter." Dkt. No. 42 ("CVR Reply") at 5. Given, however, that the contractual indemnification claim was dismissed on other grounds, *see Preserver*, 893 N.E.2d at 101, this Court is not persuaded. In light of the plain text of NYIL § 3420(d)(2), and the Court of Appeals' decisions interpreting the statute in *KeySpan* and *Preserver*, the Court concludes that this provision does not apply to the Third-Party Action. *See Johnson*, 2015 WL 5021953, at *5 (relying on *KeySpan* and *Preserver* to conclude that § 3420(d)(2) does not apply to contractual indemnification claim arising out of accident resulting in bodily injury); *N.H. Ins. Co. v. JVA Ind. Inc.*, 68 N.Y.S.3d 379 (Table) (Sup. Ct. N.Y. Cnty. 2017) (looking to *KeySpan* and *Preserver* and finding that "§ 3420(d) does not apply to claims for breach of contract or contractual indemnity").

When § 3420(d)(2) does not apply, an insurer's obligation to issue a timely disclaimer is not such a strict one. In these circumstances, "the insurer will not be barred from disclaiming coverage simply as a result of the passage of time, and its delay in giving notice of disclaimer should be considered under common-law waiver and/or estoppel principles" instead. *KeySpan*, 15

---

[10] The Court of Appeals further concluded that § 3420(d) was inapplicable because the contract was not "issued for delivery" in New York, *Preserver*, 893 N.E.2d at 101, as the statute then required, *see Carlson v. Am. Int'l Grp., Inc.*, 89 N.E.3d 490, 501–03 (N.Y. 2017); and the insurer had no duty to defend or indemnify East Coast Stucco for the contractual indemnification or breach of contract claims because the policy excluded coverage for liability assumed under a contract. *Preserver*, 893 N.E.2d at 101. No party argues the same here. The parties dispute only whether Evanston has properly disclaimed under a policy exclusion.

N.E.3d at 1198. "Under the common-law rule, delay in giving notice of disclaimer of coverage, even if unreasonable, will not estop the insurer to disclaim unless the insured has suffered prejudice from the delay." *Fairmont Funding v. Utica Mut. Ins. Co.,* 694 N.Y.S.2d 389, 391 (N.Y. App. Div. 1999). Because subsection (d)(2) does not apply, Plaintiff must demonstrate that Sprucewood suffered prejudice from Evanston's delay in issuing the November disclaimers. Plaintiff has not attempted to make such a showing. [11] Accordingly, the Court finds that Evanston's November 2016 disclaimers were not untimely as a matter of law.

### III.    Adequacy of Disclaimers

Finally, Evanston argues that it is entitled to summary judgment because it appropriately disclaimed coverage for both the underlying accident and the Third-Party Action pursuant to three provisions of the CGL Policy. Def.'s Opp'n 10–12. CVR does not dispute that Evanston sufficiently disclaimed coverage for the underlying injury, or that it could have done the same for the Third-Party Action. Rather, it argues that Evanston should be estopped from doing so because its letters did not cite the appropriate contractual provisions or give sufficient explanation for its denial of coverage. Pl. SJ Mot. 8–9, 12; Dkt. No. 39 ("Pl.'s Opp'n") at 17. For the reasons below, the Court finds that Evanston adequately disclaimed under the Contractual Liability Limitation Endorsement. CVR's motion for summary judgment is therefore denied and Evanston's is granted.

### A.  Applicable Law

To disclaim insurance coverage pursuant to an exclusion, "the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated. Absent such specific notice, a claimant might have difficulty assessing

---

[11] Indeed, the Court asked CVR repeatedly at oral argument to explain how, or identify where, it had made such a showing. CVR did not answer the Court's question—presumably because it has no answer favorable to it.

whether the insurer will be able to disclaim successfully," which "could prejudice the claimant's ability to ultimately obtain recovery." *Gen. Acc. Ins. Grp. v. Cirucci*, 387 N.E.2d 223, 225 (N.Y. 1979). Nonetheless, such disclaimers need not be perfect. "Even where disclaimer letters have misquoted or partially omitted the language of an exclusion in a policy, New York courts have held that the disclaimer remains valid as long as it identified the applicable policy exclusion and set forth the factual basis for the insurer's position that the claim fell within a policy exclusion with sufficient specificity to satisfy the statutory mandate and purpose." *Atl. Cas. Ins. Co. v. Coffey*, 548 F. App'x 661, 664 (2d Cir. 2013) (summary order) (concluding that insurer adequately disclaimed where it "clearly invoked the [applicable] exclusion" and provided "sufficient notice of the particular language" and "rationale" it relied on in disclaiming); *see Neely v. QBE Ins. Corp*., No. 22-cv-228 (JLS) (HKS), 2023 WL 6006540, at *7–*9 (W.D.N.Y. Aug. 10, 2023) (concluding that the "disclaimer was sufficiently specific to disclaim coverage for all claims in the underlying action" because it "clearly identifie[d] the conduct excluded, the provision of the policy under which it is excluded, and that the coverage is disclaimed"), *adopted by* 2023 WL 6296029 (W.D.N.Y. Sept. 27, 2023).

### B. Evanston's Bases for Disclaiming

Evanston's April 2015 and November 8, 2016 disclaimers cited three provisions of the CGL Policy: (1) the Contractual Liability Limitation Endorsement; (2) the Bodily Injury Endorsement; and (3) the Blanket Additional Insured Endorsement. Because the Court finds that Evanston sufficiently disclaimed coverage for the Third-Party Accident based on the Contractual Liability Limitation Endorsement, the Court need not reach the parties' arguments as to the other two endorsements. Accordingly, for the reasons that follow, Evanston is not estopped from

disclaiming coverage.[12]

### 1. Evanston's Citation of the Contractual Liability Limitation Endorsement

CVR argues that Evanston's disclaimers were insufficient because it cited the Contractual Liability Limitation Endorsement instead of the Contractual Liability Exclusion. Evanston insists that its citation of the former was sufficient, because it modified a key definition contained in the Exclusion—namely, the meaning of "Insured Contract." The Court agrees with Evanston.

Evanston's November 8, 2016 disclaimer letter—the only disclaimer ultimately material to this dispute[13]—stated in pertinent part:

> Your policy also includes the following endorsement which precludes coverage in this matter.
>
> CONTRACTUAL LIABILITY LIMITATION - CG 21 39 10 98
>
> . . . The definition of "insured contract" in the DEFINITIONS Section is replaced by the following:
>
> "Insured Contract" means:
>
>   a. A contract for a lease of premises. . . . ;
>   b. A sidetrack agreement;
>   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
>   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
>   e. An elevator maintenance agreement.

In accordance with the above endorsement, the contract entered into between

---

[12] Although Evanston's November 18, 2016 letter also disclaimed coverage under the Excess Policy, neither party devotes more than a footnote to Evanston's reliance on it. Indeed, Evanston does not ask the Court to find its reliance on the Excess Policy merits summary judgment in its favor. In response to CVR's contention that Evanston's reliance on the Excess Policy was untimely as a matter of law, Pl.'s Opp'n 14 n.2, Evanston says only that its November 18, 2016 letter "reiterat[ed] i[t]s prior disclaimers of coverage for the Accident and the Third-Party Action under the Excess Policy," Dkt. No. 41 ("Def.'s Reply") at 4 n.8. Accordingly, in light of its apparent abandonment of any argument based on the Excess Policy, the Court examines only whether Evanston properly disclaimed coverage under the CGL Policy.

[13] CVR does not contest the adequacy of the April 2015 letters in disclaiming coverage for the underlying accident, and these letters predate the commencement of the Third-Party Action in February 2016. *See* Def.'s 56.1 ¶¶ 10–12. Moreover, the November 18, 2016 letter disclaims coverage pursuant to the Excess Policy, which Evanston does not rely upon in this litigation. This dispute therefore hinges on the content of the November 8, 2016 letter.

> [CVR] Pinewood and Sprucewood does not meet the definition of an insured contract. Therefore, there is no contractual indemnity coverage afforded Sprucewood in this matter for liability it assumed in a contract regarding [CVR] Pinewood.

Dkt. No. 29 Ex. F (Nov. 8, 2016 Letter) at 6–7 (emphasis omitted).

CVR insists that Evanston should have instead cited the following Contractual Liability Exclusion, and that its failure to do so was fatal:

> This insurance does not apply to: . . .
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages: . . . Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

Dkt. No. 29 Ex. H (CGL Policy) at 10; Def.'s 56.1 ¶ 22.

Although Evanston's disclaimer letter could have been more fulsome, the Court finds that, in citing the Contractual Liability Limitation Endorsement, Evanston satisfied its obligation to "clearly invoke . . . the particular language on which [it] relied in its determination that coverage was excluded, as well as its rationale." *Atl. Cas. Ins.*, 548 Fed. App'x at 664. First, Evanston "clearly invoked" the definition of insured contract. *Id.* The scope of this definition—which did not include the kind of contract between the parties to this lawsuit—was the basis on which Evanston disclaimed coverage. Indeed, the key portion of the Contractual Liability Exclusion depends on the definition of insured contract. *See* Dkt. No. 29 Ex. H (CGL Policy) at 10 ("This exclusion does not apply to liability for damages: . . . [a]ssumed in a contract or agreement that is an 'insured contract.'").

Second, the disclaimer letter gave sufficient notice of Evanston's rationale. As the letter explained, the Contractual Liability Limitation Endorsement precludes coverage because "the

contract entered into between [CVR] Pinewood and Sprucewood does not meet the definition of an insured contract. Therefore, there is no contractual indemnity coverage afforded Sprucewood in this matter for liability it assumed in a contract regarding [CVR] Pinewood." Dkt. No. 29 Ex. F (Nov. 8, 2016 Disclaimer) at 7. This was sufficient under New York law to apprise Sprucewood of the basis for its disclaimer of the Third-Party Action, and allow the claimant to "assess[] whether the insurer [would] be able to disclaim successfully." *Gen. Accident Ins. Grp.*, 387 N.E.2d at 225; *see also Neely*, 2023 WL 6006540, at *7–*9 (finding disclaimer adequate where it "clearly identifie[d] the conduct excluded, the provision of the policy under which it is excluded, and that the coverage is disclaimed").

While it would have been appropriate for Evanston's disclaimer letter to cite the Contractual Liability Exclusion in addition to the Contractual Liability Limitation Endorsement, the letter as written was nonetheless sufficient to apprise claimants of the grounds for Evanston's denial of coverage. Accordingly, the Court finds that Evanston adequately disclaimed coverage on the basis of the Contractual Liability Limitation Endorsement, and it is not estopped from disclaiming coverage for the Third-Party Action. The Court does not reach the parties' remaining arguments as to whether Evanston also adequately disclaimed coverage pursuant to the Bodily Injury Endorsement and the Blanket Additional Insured Endorsement. [14]

---

[14] In its opposition, Plaintiff also relies at length on *North River Insurance Co. v. United National Insurance Co.*, 611 N.E.2d 278 (N.Y. 1993), for its position that Evanston's citation of the Bodily Injury Endorsement was inadequate. *See* Pl.'s Opp'n 19–20. As CVR's argument is pertinent only to analysis of the Bodily Injury Endorsement, and the Court does not reach Evanston's reliance on this provision for the reasons set forth above, the Court need not address *North River* further.

**CONCLUSION**

For the reasons articulated above, the Court grants Evanston's motion for summary judgment and denies CVR's. The Clerk of Court is respectfully directed to terminate the motions pending at Dkt. Nos. 28, 32, 33, and 34 and to close this case.

SO ORDERED.

Dated:      September 30, 2025
            New York, New York

_____
Ronnie Abrams
United States District Judge